# United States Court of Appeals for the Federal Circuit

2008-3222

FLOYD J. ADAMSEN,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.


Thomas F. Muther, Jr., Minahan and Muther, P.C., of Lakewood, Colorado, for petitioner.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3222

FLOYD J. ADAMSEN

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

Petition for review of the Merit Systems Protection Board decision
DE-0432-07-0345-I-1.

_____

DECIDED:   April 23, 2009

_____

Before RADER, FRIEDMAN, and LINN, Circuit Judges.

FRIEDMAN, Circuit Judge.

A former federal employee challenges the Merit Systems Protection Board ("Board")'s affirmance of his removal by the Department of Agriculture ("Department") on the grounds that the Board erroneously determined that (1) the Office of Personnel Management ("OPM") had approved the Department's performance appraisal system under which it had removed him; (2) the Department gave him an opportunity to demonstrate that his work was acceptable; and (3) his job requirements were feasible. We conclude that the record is inadequate for us to determine whether OPM had approved the performance appraisal system under which the removal was effected. We therefore vacate the Board's decision insofar as it held that OPM approval had been

shown, and remand for the Board further to develop the record and to make additional findings and conclusions on that issue based on the augmented record. We affirm the Board's ruling on the other two issues.

I

In 2006 and for a number of years before that, the appellant, Dr. Floyd J. Adamsen, was a soil research scientist with the Department. He was doing research on nitrogen fertigation management. As the administrative judge's opinion stated, "[f]ertigation is an irrigation process where water and nutrients are mixed together and then applied to plants."

Each year Dr. Adamsen was given an annual performance plan and was rated for his performance during that year. The plan set forth various categories of his work, which were divided into critical and non-critical elements. For each category, there were three possible ratings: "exceeds," "meets," or "does not meet" the standard "fully successful." A significant aspect of an item being "critical" is that a failure to be rated at least "fully successful" under that item may result in adverse employment action against the employee, including removal.

Dr. Adamsen's work for 2005 had been rated "fully successful."

Dr. Adamsen's 2006 performance plan included three critical elements, only the first of which is involved here. Critical Element 1 was headed: Dr. Adamsen "Conceives, Plans, and Conducts Research." That item set forth in some detail the various tasks Dr. Adamsen was required to perform in order to be rated as "fully successful" under that critical element. One of these was

> use ADE and SRFR models to develop fertilizer injection strategies for furrow irrigation[.]

As the administrative judge explained, these are "analytical models used to develop fertigation injection strategies."

In 2003 Dr. Adamsen had been placed on a performance improvement plan by his supervisor, Dr. Clemmens. As its title reflects, such a plan is designed to give an employee whose work has not been satisfactory the opportunity to improve his performance. Under such a plan, the employee is told the defects in his work and is closely supervised during the plan. After Dr. Adamsen had completed his performance improvement plan, Dr. Clemmens rated his performance as "fully successful."

During his mid-year performance review in July, 2006, Dr. Clemmens told Dr. Adamsen that he was below "fully successful" on three critical elements, including Critical Element 1. The following month Dr. Clemmens notified Dr. Adamsen in writing that his performance on those three critical elements was unacceptable. In that notice, Dr. Clemmens once again placed Dr. Adamsen on a ninety-day performance improvement plan.

In describing Dr. Adamsen's deficiency in Critical Element 1, Dr. Clemmens stated that "your plans for developing fertigation strategies are … not sufficiently thorough." Dr. Clemmens gave Dr. Adamsen three criteria on which his performance under Critical Element 1 during the plan would be evaluated, and also "reminded" Dr. Adamsen that he "must complete the requirements of your performance plan for the current rating period as well." The three criteria all involved Dr. Adamsen developing plans for accomplishing his annual tasks. Of particular relevance to this appeal was the second criterion:

> 2. Provide a detailed plan for research on the development of fertigation strategies, including strategies to be investigated, the ranges of irrigation systems/variables considered, and how you will evaluate appropriate strategies over these range of conditions.

The performance improvement plan did not specifically refer to the requirement in Dr. Adamsen's 2006 performance plan that he "use ADE and SRFR models to develop fertilizer injection strategies."

On November 15, Dr. Clemmens rated Dr. Adamsen "fully successful" under the performance improvement plan, which had ended eight days earlier. During November Dr. Clemmens met informally more than once with Dr. Adamsen and discussed the need "to get the ADE model working."

The performance improvement plan had told Dr. Adamsen that he "may also be subject to demotion or removal without being given another opportunity to improve" if he did not maintain "fully successful" performance for at least a year from the start of the plan. The Department reiterated this warning in its November 15, 2006 letter noting Dr. Adamsen's successful performance under the plan.

On January 22, 2007, Dr. Clemmens rated Dr. Adamsen's performance for the year 2006 "Unacceptable." After due notice, the Department removed Dr. Adamsen. The sole basis for that action was Dr. Adamsen's unacceptable performance of Critical Element 1, "failure to provide a thorough analysis of fertigation injection strategies." The Department found that Dr. Adamsen "fail[ed] to develop acceptable fertigation strategy recommendations supported by appropriate analysis using ADE and SRFR models essential to the research assignment."

Dr. Adamsen appealed his removal to the Board, which affirmed the Department's action. In her initial decision, which became final when the Board denied review, the Board's chief administrative judge held that (1) the removal action was taken pursuant to a performance appraisal plan that OPM had approved; (2) Dr. Adamsen's 2006 performance plan and particularly Critical Element 1 thereof "established a valid and reasonable performance standard"; (3) the Department "has proven, by substantial evidence, that the appellant's performance was unacceptable in critical element 1 because he failed to use the ADE model in developing fertilizer injection strategies for furrow irrigation"; (4) "the agency advised the appellant of the required standard for acceptable performance, provided guidance as to how to obtain that level of performance, and provided the appellant with a reasonable time to improve his performance. Thus, I find that the agency provided the appellant with a reasonable opportunity to demonstrate acceptable performance." Adamsen v. Dep't of Agric., DE-0432-07-0345-I-1, 2007 MSPB LEXIS 6995, at *19-20, 22, 25 (M.S.P.B. Initial Decision November 8, 2007).

II

Dr. Adamsen contends that his removal was defective because it was not shown that OPM had approved his agency's performance appraisal system pursuant to which he was removed. As explained below, generally OPM must approve such a system before an agency may use it.

The standards and procedures governing OPM approval of performance appraisal systems appear uncertain and unclear. We believe it would be helpful to the

Board and its staff, litigants before it, and government employees generally, if we clarify and restate the governing standards and principles on these issues.

A. As the Board has stated, Congress provided for agency performance appraisal systems and their approval by OPM in the Civil Service Reform Act of 1978. Daigle v. Dep't of Veterans Affairs, 84 M.S.P.R. 625, 630 (1999).

Under 5 U.S.C. § 4302, federal agencies are required to "develop" performance appraisal systems that "provide for periodic appraisals of job performance of employees" and that permit "removing employees who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance." Id. § 4302(a)(1), (b)(6). OPM is required to "review" all performance appraisal systems to "determine whether [they] meet[]" the statutory requirements. Id. § 4304(b)(1). If it determines that a system does not do so, it is to "direct the agency to implement an appropriate system or to correct operations under the system, and any such agency shall take any action so required." Id. § 4304(b)(1), (3). Pursuant to statutory rule-making authority, 5 U.S.C. § 4305, OPM has promulgated regulations that specify the numerous requirements for such systems, 5 C.F.R. § 430.204, and require it to "review and approve an agency's performance appraisal system(s)." 5 C.F.R. § 430.210.

At the outset of its administration of these provisions, the Board required agencies to show, in every case as part of their defense to challenges to performance-based adverse actions taken pursuant to performance appraisal systems, that OPM had approved the system involved. In Daigle, however, the Board ended that requirement. It explained:

> There is no statutory requirement for renewing
> approval of an agency's performance appraisal system once

> in place, and we are unaware of any agency which has not received OPM approval of its performance appraisal system. Therefore, we conclude that it is no longer necessary to perpetuate an outmoded paperwork requirement. However, if an appellant alleges that there is reason to believe that an agency is not in compliance with the law, the Board may require an agency to submit evidence that it has received OPM approval of its performance appraisal system.

Daigle, 84 M.S.P.R. at 630-31.

In other words, agencies would be required to show OPM approval only if the employee alleges that "there is reason to believe" that OPM had not done so.

Although Daigle involved a performance-based denial of a within-grade pay increase, its rationale, ruling, and analysis are equally applicable to other performance-based adverse actions, including the removal here at issue.

B. The remaining questions are whether and on what basis OPM is required to approve changes or modifications in an agency's previously approved system. As the Board pointed out in Daigle, "[t]here is no statutory requirement for renewing approval of an agency's performance appraisal system once in place." On the other hand, the policy of requiring OPM approval of performance-appraisal systems also calls for OPM approval of significant changes in those systems. An OPM regulation requires agencies to submit to OPM "for approval" both "a description of its appraisal system[s] … and any subsequent changes that modify any element of the agency's system(s) that is subject to a regulatory requirement in this part." 5 C.F.R. § 430.209(a). OPM has not further articulated its standards for reviewing changes in previously approved plans.

In Brown v. Department of Labor, 27 M.S.P.R. 255 (1985), which involved an employee's removal for unacceptable performance, the Board stated:

Thus, a review of the August 1981 changes establish that those changes significantly affected the rights of the agency's employees under its performance appraisal system. Even if we accept Agency Exhibit R-62 as the system under which appellant was removed, we would nevertheless find that that system contained substantive changes which were not approved by OPM in accordance with the July 7, 1981 OPM approval letter, which requires OPM review and approval of any subsequent changes covered by statute or regulation. We find that the changes made related to the establishment of performance standards under 5 U.S.C. § 4302(b) and 5 C.F.R. § 430.204 and thus required OPM approval. Therefore, we find that the agency failed to show that the modified performance appraisal system under which it removed appellant was approved by OPM.

27 M.S.P.R. at 258 (internal citation omitted).

We agree with the Board that the standard should be based on the nature of the changes. If an agency makes changes to a previously-OPM-approved performance appraisal system that significantly alter an employee's performance standards and obligations, OPM review of those changes is necessary to achieve compliance with the basic purpose underlying the OPM-approved requirement.

C. Under the foregoing principles, neither the administrative record nor the Board's findings enables us to determine whether OPM was required to approve the amendments to the Department's performance appraisal system or whether it approved the changes in the system under which the removal action was taken against Dr. Adamsen.

Dr. Adamsen recognizes that, in its letter of September 10, 1986, OPM approved the Department's performance appraisal plan that initially covered him. He contends, however, that thereafter the Department made changes in its plan, which it did not

submit for OPM approval and which OPM had not approved, and that his removal was improperly effected under the changed plans.

At the end of the September 10 approval letter, OPM stated:

> Any proposed changes to the PMS plans must be submitted to this office for prior approval if the change would affect a provision of the plan covered by regulation or law.

The Board's administrative judge cited the 1986 letter. In that letter OPM "approved the agency's performance appraisal plan" and stated that "[t]he agency updated its performance appraisal plan in 1995, 1998, and 2003." Initial Decision, 2007 MSPB LEXIS 6995, at *12-13. The administrative judge stated that:

> [i]n Daigle the Board noted there was no statutory requirement for renewing OPM approval of an agency's performance appraisal system once it was in place, that [t]he Board has held that a letter from OPM stating that it had approved the agency's performance management system plan satisfies the agency's burden of affirmatively showing, by substantial evidence, that it had received OPM approval before undertaking the personnel action at issue. Thus, I find the agency has established, by substantial evidence, that its performance-based action against the appellant was taken under an OPM-approved performance appraisal plan at the time of the appellant's removal.

Id. at * 13 (internal citation omitted).

The administrative judge did not address the questions of what changes the agency made in its performance appraisal plan or whether those changes also required OPM approval.

On the record before us, we cannot determine what changes the Department made in its performance appraisal plan, how significant those changes were, and what impact, if any, they had on the Department's determination that Dr. Adamsen's performance had been inadequate. We cannot tell whether the Department was

required to, or did, submit those changes to OPM for approval or whether OPM approved them. Indeed, without knowing what Dr. Adamsen said about OPM's alleged failure to approve the changes in the Department's plan, we cannot determine whether his allegation of non-approval satisfied the Daigle standard that he must allege that there was "reason to believe" that his agency was not in compliance with the law.

Accordingly, we vacate the Board's finding that the Department's removal of Dr. Adamsen was done pursuant to an OPM-approved plan, and remand to the Board for further development of the record on this issue and to make additional findings and conclusions in light of the augmented record.

III

A. The Department removed Dr. Adamsen because in conducting his research he disregarded an instruction from his supervisor, Dr. Clemmens, that he was to use two specified computer models, known as ADE and SRFR. Dr. Adamsen has conceded that he did not use the ADE model.

Since the performance improvement plan did not refer to the requirement to use the ADE model in his research, it follows that Dr. Adamsen's failure to do so must have occurred after the plan period ended on November 7, and after Dr. Clemmens informed him on November 15 that his performance thereunder was "fully successful." Dr. Clemmens based his conclusion that Dr. Adamsen had not used the ADE model on a draft of Dr. Adamsen's research paper (prepared with two other scientists), which he submitted in December, after the performance plan period had ended. Presumably his failure to use that model occurred between November 7, when the performance improvement plan ended, and the date in December on which he submitted the draft.

One might question whether the failure to use a particular computer model in doing research constitutes a valid basis for removing, for unsatisfactory performance, an employee who apparently had performed satisfactorily for twenty years and had been given two grade promotions. Fertigation, however, is a highly complex technical subject, with which we are unfamiliar. If Dr. Clemmens, who apparently is an expert in the use of the ADE model in the field, believed that use of a particular computer model was necessary in the performance of Dr. Adamsen's research, we have no basis for concluding that that judgment was improper or that Dr. Adamsen's failure to follow that directive did not render his performance unacceptable.

We need not decide those questions, however, since Dr. Adamsen, who was represented by counsel, has not challenged his removal on that ground. Instead, he argues only the two substantive grounds on which he challenged his removal before the Board: (1) that the Department did not give him an opportunity to demonstrate acceptable performance, and (2) that his removal for failure to use the ADE model was arbitrary and capricious because (a) he could not use the model in his work and (b) he believed that he had the right to decide whether or not to use it.

B. An agency may remove an employee for unacceptable performance only after it has given him or her an "opportunity to demonstrate acceptable performance." 5 U.S.C. § 4302(b)(6). Under Board precedent, this requires "communication of the [performance] standards to the employee." Donaldson v. Dep't of Labor, 27 M.S.P.R. 293, 297 (1985). Adamsen argues that he was not given "an opportunity to demonstrate acceptable performance" because the requirements under the

performance improvement plan did not specifically include using the ADE model in his research work.

The lack of any explicit reference in Dr. Adamsen's performance improvement plan to using the ADE model does not show that he was not given the "opportunity to demonstrate acceptable performance" that section 4302(b) requires. His obligation to use the ADE model was "communicat[ed]" to him in his original performance plan for 2006, which explicitly told him he was to use both the ADE and SRFR models. In November, Dr. Clemmens again "communicat[ed]" to Dr. Adamsen the need "to get the ADE model working." Dr. Adamsen concedes that he did not use the ADE model in 2006. Under these circumstances, he cannot validly complain that he was not given an opportunity to demonstrate acceptable performance.

C.      Dr. Adamsen's justification for his failure to use the ADE model is two-fold. First, he contends that he could not have used the model because the computer technician who would operate the program was not available. The Board justifiably rejected that contention because the record did not support it.

Second, he argues he was not told that he was required to use that model; that he believed it was his choice whether or not to do so; and that it was his view that use of the model would not be appropriate in his research. As previously noted, however, he was explicitly directed to use both the ADE and the SRFR models. In the face of this instruction, Dr. Adamsen could not justify his failure to use the ADE model on the ground that he believed the other model was better suited to his work.

CONCLUSION

The part of the decision of the Board that held that OPM had approved the Department's performance appraisal plan pursuant to which Dr. Adamsen was removed is vacated, and the case is remanded to the Board for further proceedings on this question consistent with this opinion. The remaining portions of the Board decision that Dr. Adamsen has challenged before this court are affirmed.

<u>VACATED IN PART, AFFIRMED IN PART</u>, and <u>REMANDED</u>.